PEARSON, J.

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| JEREMY L. ATHEY, | ) | CASE NO. 4:19-CV-2686 |
| | ) | |
| Plaintiff, | ) | |
| | ) | JUDGE BENITA Y. PEARSON |
| v. | ) | |
| | ) | |
| CONSUMERS NATIONAL BANK, | ) | **MEMORANDUM OF OPINION AND** |
| | ) | **ORDER** |
| Defendant. | ) | [Resolving ECF No. 4] |

Pending is Defendant Consumer National Bank ("CNB")'s Motion to Dismiss (ECF No. 4). Plaintiff Jeremy L. Athey filed a Response (ECF No. 9) and Defendant Replied (ECF No. 10). Having been advised by a review of the parties' filings and the applicable law, the Court grants Defendant's motion.

**I. Background**

On August 28, 2018, Plaintiff's spouse, Christine Athey, initiated divorce proceedings. ECF No. 1 at PageID #: 3. While Plaintiff and Christine were still married in early 2019, he sought to purchase real property located at 3248 S. Newton Falls Road, Diamond, Ohio 44412 ("Newton Falls Property"). *Id*. To obtain the funding required to purchase the Newton Falls Property, Plaintiff sought a mortgage loan from Defendant CNB. Plaintiff and CNB began the pre-qualification process on February 8, 2019. *Id*. On February 11, 2019, Plaintiff entered into a formal purchase agreement with the seller to purchase the Newton Falls Property for $130,000.00 with the transaction to close on or about March 15, 2019. *Id*. at PageID #: 4. On a number of

(4:19CV2686)

occasions throughout the underwriting process, Defendant requested that Plaintiff submit either Christine's signature releasing her interest in the Newton Falls Property, or a final divorce decree.[1] *Id*. at PageID #: 3-7. Plaintiff had to make this submission before the underwriter would give a final approval on the mortgage loan. *Id*. at PageID #: 5.

On March 1, 2019, Defendant informed Plaintiff that he was "conditionally approved" for the mortgage and stated that a few items needed to be submitted for final approval and closing. *Id*. at PageID #: 5. One of those items included the submission of Christine's signature given that the divorce proceedings were being "pushed back." *Id*. at PageID #: 4-5.

On March 8, 2019, Defendant provided Plaintiff with the mortgage loan agreement ("Commitment") which required as a precondition that "the mortgage or deed of trust, must also be signed by any non-applicant spouses if their signature is required under state law to create a valid lien, pass clear title, or waive inchoate rights to property." *Id*. at PageID #: 6; ECF No. 1-6 at PageID #: 38. The Commitment further provided in the cancellation subsection that: "[CNB] reserve[s] the right to cancel this commitment for any of the following reasons" including Plaintiff's "fail[ure] to comply with any of the conditions contained in this commitment." ECF No. 1-6 at PageID #: 39.

On March 18, 2019, a Mahoning County Domestic Relations Court Judge issued an order requiring Christine to sign a release of dower so that Plaintiff could purchase a separate home. ECF No. 1 at PageID #: 7. Plaintiff forwarded a copy of the court's order to Defendant. *Id*.

---

[1] Defendant communicated with Plaintiff through its employee, mortgage loan officer, Rebecca Sims. *See* ECF No. 1 at PageID #: 3-7.

(4:19CV2686)

On the day the mortgage loan was scheduled to close[2], Defendant withdrew from the Commitment, stating that Plaintiff was not approved for the mortgage. *Id*. at PageID #: 7-8. At the time of closing, Plaintiff had not provided Defendant with either a final divorce decree or the submission of Christine's signature releasing her rights to the Newton Falls Property. *Id*. at PageID #: 7-8.

Plaintiff subsequently sought alternative sources of funding and purchased the Newton Falls Property on April 11, 2019. *Id*. at Page ID #: 8-9. He alleges that the "replacement loans" --which he obtained through his parents--have "less favorable terms" than what he would have achieved through his Commitment with CNB. *Id*. at PageID #: 8-9. On August 7, 2019, Plaintiff and Christine's divorce was ultimately finalized. *Id*. at PageID #: 8.

Plaintiff filed the instant action in federal court on November 15, 2019 alleging violations of the Equal Credit Opportunity Act as well as common law claims for breach of contract, promissory estoppel, and unjust enrichment. He is seeking actual damages, punitive damages, and attorneys' fees and costs. *Id*. at PageID #: 15. On December 16, 2019, Defendant filed the instant Motion to Dismiss the Complaint pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure for failure to state a claim upon which relief can be granted. ECF No. 4.

**II. Standard of Review**

To survive a Fed. R. Civ. P. 12(b)(6) motion to dismiss, Plaintiff's Complaint must allege

---

[2] Neither party specifies in their filings the actual date of closing.

(4:19CV2686)

enough facts to "raise a right to relief above the speculative level." *Ass'n of Cleveland Fire Fighters v. City of Cleveland, Ohio*, 502 F.3d 545, 548 (6th Cir. 2007) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). Fed. R. Civ. P. 8(a)(2) requires only that a pleading contain "a short and plain statement of the claim showing that the pleader is entitled to relief." However, "a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555 (citing *Papasan v. Allain*, 478 U.S. 265, 286 (1986)). A complaint requires "further factual enhancement," which "state[s] a claim to relief that is plausible on its face." *Id.* at 557, 570. A claim has facial plausibility when there is enough factual content present to allow "the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). When a claim lacks "plausibility in th[e] complaint," that cause of action fails to state a claim upon which relief can be granted. *Twombly*, U.S. 550 at 564.

### III. Analysis

**A. ECOA Claim (Count 1)**

**1.**

The Equal Credit Opportunity Act ("ECOA") prohibits creditors from discriminating against any credit applicant "with respect to any aspect of a credit transaction . . . on the basis of race, color, religion, national origin, sex, or marital status." 15 U.S.C. § 1691(a)(1); *see also* 12 C.F.R. § 202.1(b). As an entity granting members the ability "to defer payment of a debt or to incur debts and defer its payment or to purchase property or services and defer payment

4

(4:19CV2686)

therefor," Defendant CNB is a "creditor" within the meaning of the ECOA. 15 U.S.C. § 1691a(d); *Barney v. Holzer Clinic, Ltd.*, 110 F.3d 1207, 1209 (6th Cir. 1997) (quoting statutory definition of a creditor). With regard to marital status, the ECOA prohibits a creditor from requiring the signature of an applicant's spouse or other person, other than a joint applicant, on any credit instrument if the applicant qualifies under the creditor's standards of credit-worthiness for the amount and terms of the credit requested. 12 C.F.R. § 202.7(d)(1). *See Miller v. American EXPCO*, 688 F.2d 1235, 1239 (9th Cir. 1982) (the ECOA was meant to protect women, among others, from arbitrary denial or termination of credit); *see also Anderson v. United Finance Co.*, 666 F.2d 1274, 1277 (9th Cir. 1982).

To establish a prima facie case of credit discrimination under the ECOA, Plaintiff must establish the following four elements: "(1) he is a member of a protected class; (2) he applied for and was qualified for a loan; (3) the loan application was rejected despite his [ ] qualifications; and (4) the lender continued to approve loans for applicants with qualifications similar to those of the plaintiff." *Hood v. Midwest Sav. Bank*, 95 F. App'x 768, 778 (6th Cir. 2004). In its defense, a creditor may then point to one of several exceptions to this rule, including 12 C.F.R. § 202.7(d)(4) which allows a creditor to obtain the "signature of the applicant's spouse . . . on any instrument necessary, or reasonably believed by the creditor to be necessary, under applicable law to make the property being offered as security available to satisfy the debt in event of default." 12 C.F.R. § 202.7(d)(4); *see RL BB Acquisition, LLC v. Bridgemill Commons Dev. Grp., LLC*, 754 F.3d 380, 389 (6th Cir. 2014) ("If the creditor seeks refuge in one of the

(4:19CV2686)

regulatory exceptions, *see* 12 C.F.R. § 202.7(d)(2)-(4), 12 C.F.R. § 1002.7(d)(2)-(4), the creditor bears the burden of proving that the exception applies.").

Plaintiff alleges Defendant violated the ECOA when it withdrew from the parties' Commitment on the day of closing. He claims that Defendant's decision to withdraw from the Commitment was on the basis of his marital status. ECF No. 1 at PageID #: 2. Defendant, however, asserts that Plaintiff's discrimination claim should be dismissed because it has demonstrated a complete defense under the ECOA. ECF No. 4-1 at PageID #: 71. Specifically, Defendant argues that it had a legitimate, non-discriminatory basis for withdrawing from the Commitment given that Plaintiff failed to provide a final divorce decree or signed waiver of dower rights prior to closing. *Id*.

The Federal Reserve Board, pursuant to the ECOA, 15 U.S.C. § 1691b(a), promulgated 12 C.F.R. § 202.1 *et seq*. Under the exception contained in 12 C.F.R. § 202.7(d)(4), a creditor is entitled to require the signature of a debtor and spouse "on any instrument necessary, or reasonably believed by the creditor to be necessary, under applicable state law to make the [residence] available to satisfy the debt in the event of default[.]" 12 C.F.R. § 202.7(d)(4). The ECOA's exception regarding the signature of an applicant's spouse is clear: "A request for the signature of both parties to a marriage for the purpose of creating a valid lien, passing clear title, waiving inchoate rights to property,
or assigning earnings *shall not constitute discrimination* under the EOCA." 15 U.S.C. § 1691d(a) (emphasis added). Defendant was thus entitled to obtain its reasonable request prior to

6

(4:19CV2686)

the closing of the mortgage loan: either the submission of a final divorce decree *or* a signed waiver of dower rights.

When the Complaint is construed in the light most favorable to Plaintiff, he is unable to succeed on a discrimination claim under the ECOA. Plaintiff has failed to plead factual content regarding the fourth element as articulated by the Sixth Circuit in *Hood*: that "the lender continued to approve loans for applicants with qualifications similar to those of the plaintiff." *Hood*, 95 F. App'x at 778. In his Response in Opposition, Plaintiff requests that the Court grant him leave to amend his Complaint to plead factual information sufficient to meet the fourth element of his ECOA claim.[3] ECF No. 9 at PageID #: 121. The Court finds that even if Plaintiff were to allege plausible facts showing disparate treatment, his ECOA claim would still fail because CNB's decision to withdraw from the Commitment was not discriminatory as a matter of law. Finding any amendment to be futile, Plaintiff's request is hereby denied. *See DeBolt v. Cassens Transport Co.*, 2012 WL 3497659, at *1 (N.D. Ohio Aug. 15, 2012) (Pearson, J.) (finding a motion to amend to be deemed futile if the proposed amendment "could not withstand a Rule 12(b)(6) motion to dismiss") (quoting *Rose v. Hartford Underwriters Ins. Co.*, 203 F.3d 417, 420 (6th Cir. 2000)).

---

[3] Plaintiff notes in his Response in Opposition, that he did not plead all four elements required by the Sixth Circuit in *Hood* because he relied on *Mays v. Buckeye Rural Elec. Coop., Inc.*, 277 F.3d 873 (6th Cir. 2002), an earlier Sixth Circuit case which set out a less burdensome standard for ECOA claims. ECF No. 9 at PageID #: 120. The Court declines to adopt Plaintiff's characterization of the prima facie case and instead relies on the test articulated and *instructed* by the Sixth Circuit's more recent decision in *Hood*. *See Hood*, at 95 F. App'x at 778 no.7.

7

(4:19CV2686)

**2.**

Secured creditors, like CNB, may decline to extend mortgage loans when they maintain reasonable concerns in securing the loan given an applicant's pending divorce proceedings. *See* *Evans v. Centralfed Mortg. Co.*, 815 F.2d 348, 351-52 (5th Cir. 1987) ("What is significant is that [the bank] reasonably believed that its policy was necessary to perfect its security interest."); *see also* *McKenzie v. U.S. Home Corp.*, 704 F.2d 778, 779 (5th Cir. 1983) (finding that when plaintiff was denied a mortgage, the bank reasonably required either a joint signature or divorce decree to ensure valid lien).

Ohio state law defines "marital property" to include "[a]ll interest that either or both of the spouses currently has in any real or personal property, including but not limited to, the retirement benefits of the spouses, and that was acquired by either or both of the spouses during the marriage." O.R.C. § 3105.171(A)(3)(a)(ii); *see also* *Williams v. Williams*, 106 N.E.3d 317, 319 (Ohio Ct. App. 2018) (citing O.R.C. § 3105.171(A)(3)(a)). At the time the mortgage loan was scheduled to close, Plaintiff and Christine were still lawfully married--and would remain so for five months after closing. At that time, any real property that Plaintiff would have acquired with the CNB loan proceeds would have been subject to division upon Plaintiff's eventual divorce. CNB thus had a legitimate basis, under Ohio law, for requiring Plaintiff to produce a signed release of his spouse's interest in the Newton Falls Property.

Plaintiff submits that pursuant to the Domestic Relations Court's order, "Christine was obligated to sign a release of her dower rights to the Newton Falls [ ] Property" and therefore, Defendant should have allowed Plaintiff to close. ECF No. 1 at PageID #: 12. Nevertheless, it

8

(4:19CV2686)

remains that on the day of closing, and after numerous requests from CNB during the underwriting process, Plaintiff had *still* not met the Commitment's precondition. On Plaintiff's asserted facts, the Court finds that Defendant would have maintained a "reasonable concern" in securing the mortgage loan. *See* McKenzie, 704 F.2d at 779. This reasonable concern amounts to a non-discriminatory basis for withdrawing from the parties' Commitment.

Accordingly, Plaintiff's ECOA claim fails as a matter of law.

**B. Breach of Contract Claim (Count 2)**

Under Ohio law, the elements of a breach of contract claim include: (1) the existence of a contract; (2) performance by the plaintiff; (3) breach by the defendant; and (4) damage or loss to the plaintiff as a result of the breach. *Thomas v. Publishers Clearing House, Inc.*, 29 F. App'x 319, 322 (6th Cir. 2002) (citing *Doner v. Snapp*, 649 N.E.2d 42, 44 (Ohio Ct. App. 1994). To prove the existence of a valid contract, Plaintiff must prove all the essential elements of a contract, including an offer, acceptance, the manifestation of mutual assent, and "consideration (the bargained for legal benefit and/or detriment)." *Kostelnik v. Helper*, 770 N.E.2d 58, 61 (Ohio 2002). Plaintiff must also show that there was a "meeting of the minds" and that the contract was definite as to its essential terms. *Episcopal Retirement Homes, Inc. v. Ohio Dept. of Indus. Relations*, 575 N.E.2d 134, 136 (Ohio 1991).

Defendant argues that Plaintiff's breach of contract claim should fail because no enforceable contract was formed. ECF No. 4-1 at PageID #: 74. The Court agrees. Plaintiff did not satisfy a condition precedent in the Commitment, namely by having his spouse sign a release

9

(4:19CV2686)

of her interest or by producing a final divorce decree. A "condition precedent" is an occurrence that must take place before

a contractual obligation becomes effective. *Polek v. Tillimon*, 2002 WL 313401, *3 (Ohio Ct. App. 2002); *Troha v. Troha*, 663 N.E.2d 1319, 1323 (Ohio Ct. App. 1995). If a condition precedent is not met, a party is excused from performing the duty promised under the contract. *Troha*, 663 N.E.2d at 1323. Plaintiff concedes that prior to closing he had not yet provided CNB with a signed release of his spouse's interest in the Newton Falls Property. ECF No. 1 at PageID #: 7-8. He also concedes that he was still married at the time of closing and therefore, unable to produce a divorce decree. *Id*. The Court therefore finds that Plaintiff did not fulfill a condition precedent to obtaining creditworthiness for the CNB mortgage loan.

Because no binding contract was formed between the parties, Plaintiff's breach of contract claim fails as a matter of law.

### C. Promissory Estoppel Claim (Count 3)

In his Response to Defendant's Motion to Dismiss, Plaintiff voluntarily withdrew his Promissory Estoppel claim. ECF No. 9 at PageID #: 125. Therefore, Defendant's Motion to Dismiss is granted as to this claim.

### D. Unjust Enrichment Claim (Count 4)

Unjust enrichment is an equitable doctrine that allows a party to pursue the reasonable value of services rendered upon another party when a benefit is conferred without an exchange of just compensation. *Cheers Sports Bar & Grill v. DIRECTV*, 563 F. Supp. 2d 812, 819 (N.D. Ohio 2008) (quotations omitted). Under Ohio law, to recover for unjust enrichment, Plaintiff

10

(4:19CV2686)

must prove that: (1) Plaintiff conferred a benefit upon Defendant; (2) Defendant knew of such benefit; and (3) Defendant retained the benefit "under circumstances where it would be unjust to do so without payment." *Andersons, Inc. v. Consol, Inc.*, 348 F.3d 496, 502 (6th Cir. 2003) (citing *Brown Graves Co. v. Obert,* 648 N.E.2d 1379, 1383 (Ohio Ct. App. 1994)).

Plaintiff states that he conferred a $400.00 benefit on Defendant, which he "remitted in consideration of the Application and Commitment." ECF No. 1 at PageID #: 15. He further avers that it would be unjust for Defendant to retain the $400.00 benefit, since Defendant ultimately refused to provide the mortgage loan. ECF No. 9 at PageID #: 125. Defendant argues, however, that it would not be unjust for Defendant to keep the $400.00 because Plaintiff received his bargained for exchange. ECF No. 4-1 at PageID #: 76.

The Court finds that Plaintiff indeed received his bargained for exchange: a mutual undertaking that if he met the preconditions to qualifying for a mortgage, Defendant would provide the mortgage loan. Plaintiff failed to meet all of the preconditions. He has also failed to demonstrate circumstances where it would be unjust for Defendant to retain the $400.00.

Accordingly, Plaintiff's unjust enrichment claim fails as a matter of law.

### IV. Conclusion

For the foregoing reasons, the Court grants Defendant's Motion to Dismiss the Complaint in its entirety pursuant to Fed. R. Civ. P. 12(b)(6). ECF No. 4. The Telephonic Case

(4:19CV2686)

Management Conference set for February 19, 2020 at 11:30 a.m. is cancelled.

    IT IS SO ORDERED.

| | |
|---|---|
|  February 18, 2020  |  */s/ Benita Y. Pearson*  |
| Date | Benita Y. Pearson |
| | United States District Judge |